IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| HARMONY FAMILY CENTER, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| | ) | JURY TRIAL REQUESTED |
| TOUGH MUDDER, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK NON-INFRINGEMENT AND CANCELLATION OF FEDERAL TRADEMARK RIGHTS

Plaintiff Harmony Family Center, Inc., for its Complaint against Defendant Tough Mudder, Inc., alleges as follows:

### NATURE OF THE ACTION

1. This is an action seeking a declaration that Plaintiff Harmony Family Center Inc.'s ("Harmony" or "Plaintiff") use of its federally registered trademark MUDDER'S DAY MADNESS 5K does not infringe any rights of defendant Tough Mudder, Inc. ("Defendant" or "Tough Mudder"); and cancellation of Tough Mudder's federal trademark registration.

### THE PARTIES

2. Plaintiff Harmony Family Center Inc. ("Plaintiff" or "Harmony") is a Tennessee non-profit corporation having an address located 118 Mabry Hood Road., Suite 400 Knoxville, TN 37922.

3. On information and belief Defendant, Tough Mudder Inc. ("Defendant" or "Tough Mudder") is a Delaware corporation having an address located at 15 Metrotech Center 7th Floor Brooklyn, NY 11201.

## JURISDICTION AND VENUE

4. This action arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202 *et seq* and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b), (c) or 1400(b) in that, on information and belief, Defendant has done business in this district or a substantial part of the events giving rise to Plaintiff's claims occurred in or were aimed at this judicial district. On information and belief, Defendant is subject to the personal jurisdiction of this Court and is amenable to service of process.

## FACTS

5. Plaintiff Harmony Family Center Inc. was founded in Knoxville, Tennessee in 1996. Its mission is to serve children, families and communities through counseling, education, and adoption. Since its founding, Harmony has worked to find families for children domestically, internationally and through the child-welfare system. Each year, Harmony serves over 2,000 children and youth in Tennessee - all of whom were formerly in Tennessee's foster-care system and who have experienced trauma and neglect. In 2015, Harmony found homes for over 100 youth that had been labeled "long-stayers" by the system, were older, and had special physical or emotional needs. Harmony's post-adoption disruption rate is less than 1%, whereas the national average is 15-20%.

6. Harmony's objectives are to find safe, permanent homes for the most vulnerable children in our society, to support the children's successful adoption by providing post-adoption support services to adoptive families, and to reduce the number of children that age out of foster care

without a permanent family. Harmony's post-adoption services program reportedly saves the State of Tennessee $6.5 million each year by keeping adoptive families together.

7. Harmony is a non-profit organization and it activities are funded, in large part, by organizing community events and through donations from the community. For example, since 2013, Harmony has organized an annual fundraising event called MUDDER'S DAY MADNESS. Participants take part in an off-road mud run foot race that is approximately 5 kilometers (~3.1 miles) long where they navigate obstacles such as mud, water, trails, and hills.

8. However, this is a family oriented event that is primarily intended to promote and support the mission of Harmony. For that reason, in addition to raising funds for Harmony, a key aspect of the race is to raise awareness of the importance of the work that is taking place at Harmony and to encourage participants to become involved in its mission. The race is designed to be safe for children (8 and up) as well as adults. Participants often include children and adults, including donors and past, current and potential clients of Harmony. Signage discussing the needs of at-risk children and the mission of Harmony is placed along the length of the course. All proceeds from the MUDDER'S DAY MADNESS event benefit Harmony and its service to children.

9. The phrase "MUDDER'S DAY" was selected by Harmony, at least in part, for its double entendre or its double meaning. The term "mudder" was historically used for a horse that runs well in wet or muddy conditions. That meaning has now expanded to include many different things that run in wet or muddy conditions, including cars, tires and people. Therefore, the phrase "mudder's day" refers to the "mudders" or the participants of the race that are running through the mud. At the same time, the term "mudder" is used for its phonetic similarity to "mother." This is especially fitting considering the mission and clientele of Harmony. To

emphasize that connection in the public's mind, the annual MUDDER'S DAY MADNESS event takes place on the Saturday that precedes Mother's Day.

10. Harmony is the owner of U.S. Trademark Registration No. 4703270 (the '270 Registration) for the mark MUDDER'S DAY MADNESS 5K in International Class 036 for "Charitable fundraising services by means of running and walking events; Charitable fundraising services by means of selling T-SHIRTS to raise funds for CHILDREN'S AND FAMILY SERVICES AT CAMP MONTVALE; Fundraising services, by means of organizing, arranging and conducting fundraising programs for the benefit of schools and non-profit organizations." A true and correct copy of the '270 registration is attached as *Exhibit 1*. The '270 Registration is valid and subsisting.

11. Upon information and belief, Defendant Tough Mudder is a multi-million-dollar company that organizes military-type endurance mud run race events that the Defendant calls "The Toughest Event On The Planet." According to the Defendant's website (http://toughmudder.com): "Tough Mudder is a 10-12 mile mud and obstacle course designed to drag you out of your comfort zone by testing your physical strength, stamina, and mental grit. With no podiums, winners, or clocks to race against, it's not about how fast you can cross the finish line. Rather, it's a challenge that emphasizes teamwork, camaraderie, and accomplishing something almost as tough as you are." The races typically involve 20-25 obstacles that are designed to play on common human fears such as fire, water, electricity, and heights.

12. Defendant is a for-profit company and none of the revenue generated by the admissions sales go directly to any charity. Instead, participants are incentivized to raise money that the participants then donate to charity.

13. Defendant promotes these race events using the term MUDDER alone as well together with other terms, including TOUGH MUDDER, MINI MUDDER, URBAN MUDDER, and others (collectively, the Defendant's "MUDDER Marks").

14. Defendant obtained U.S. Trademark Registration No. 4527038 (the '038 Registration) for the mark MUDDER in International Class 041 for "Organizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events." Defendant filed its application to register the MUDDER mark on June 20, 2013, and obtained a registration on May 6, 2014. A true and correct copy of the '038 registration is attached as *Exhibit 2*.

15. Harmony filed its application to register MUDDER'S DAY MADNESS 5K on July 18, 2014, and obtained a registration on March 17, 2015. Although filed after Defendant's application for MUDDER was filed, Harmony's application for MUDDER'S DAY MADNESS 5K was never refused registration based on a likelihood of confusion with the MUDDER mark or any other mark.

16. Harmony's '270 registration provides it with a statutory presumption that its MUDDER'S DAY MADNESS 5K mark is valid, that Harmony is the owner of that mark, that it has the exclusive right to use the registered mark, and that Harmony is entitled to nationwide priority based on the filing date.

17. On information and belief, there have been no reported instances of actual confusion between Harmony's MUDDER'S DAY MADNESS 5K mark and any of the Defendant's MUDDER Marks.

18. On February 16, 2016, Plaintiff received a telephone call from Defendant's counsel, who asserted that Plaintiff's use of MUDDER'S DAY MADNESS 5K was in violation of

Defendant's trademark rights and demanding that Plaintiff stop using the term "mudder" in connection with its race events.

19. On March 4, 2016, Plaintiff received an email followup from Defendant's counsel stating as follows:

> I am following up on a phone call regarding the usage of "Mudder" in connection with a mud race. I am the associate counsel at Tough Mudder Incorporated, and we are famour (sic) for our family of "Mudder" marks including "Mudder" alone. Your current use in connection with Mudder's Day Madness is infringing. We have no interest in having a legal dispute with an organization such as your's (sic), which is fitness and charity minded. However, the trademark law obliges us to police our marks.
>
> Please call me at the number herein to solve this matter.

20. Plaintiff's counsel explained in a telephone call to Defendant's counsel on March 7, 2016, and in a follow-up email that there was no likelihood of confusion. This was based on the fact that the U.S. Trademark Office had examined the application for MUDDER'S DAY MADNESS 5K and approved it for registration over the Defendant's various federal registrations for the MUDDER Marks.

21. The Plaintiff's and Defendant's marks are readily distinguishable based on the differences in the marks themselves, including the connotation of the marks, namely the double entendre present in the Plaintiff's mark that is absent from the Defendant's mark.

22. The marks are also distinguishable based on the differences in the services and relevant consumers. The Defendant's race is a for-profit event that mimics military-type training intended to test participants' endurance and toughness in a harsh, demanding and sometimes dangerous course. The TOUGH MUDDER contest is essentially a simulation of military

training. This connection is emphasized and promoted by the Plaintiff as evidenced by the incentives for participants to donate money to military charities.

23. On the other hand, the Plaintiff's event is a family-oriented event that encourages the participation of adults as well as children. The purpose of the event is to promote the charitable mission of Harmony. The proceeds from the event go to support that mission.

24. Finally, the letter explained that "mudder" had been used by many others for identical services, including a number of instances that predate the Defendant's first use. Based on this widespread use, "mudder" was a weak as a trademark and was narrowly protected.

25. In fact, the public's use of "mudder" to refer to races that involve mud, water and obstacles is so widespread that the public has come to associate and to use the term to refer, generically, to these types of race events without referring to any particular source of those races.

26. Despite its statement that it did not wish to have a legal dispute, Defendant continued to send threatening letters to intimidate Plaintiff in an attempt to force Plaintiff to stop using its federally-registered mark. After being contacted by Plaintiff's counsel via telephone and email and being informed that Plaintiff was represented by counsel, Defendant's counsel directly contacted Plaintiff's employees with a cease and desist letter. That letter stated "Tough Mudder has successfully litigated and been granted a permanent injunction barring the use of the word "Mudder" in connection with obstacle course challenges" and then provided a listing of several lawsuits. The letter concludes by stating: "Tough Mudder will undertake all appropriate steps to protect its Mark and its associated goodwill. You can avoid legal action by immediately ceasing and desisting any and all infringing use of the Mark. You must cease and desist all promotion and/or marketing of your products and services in connection with the Mark. You are hereby put on notice that Tough Mudder will be monitoring your use of the Mark for this

purpose." A copy of this letter was provided to Plaintiff's counsel by Defendant's counsel the following day.

27. The actions by Tough Mudder, including asserting that Harmony's use of its federally-registered MUDDER'S DAY MADNESS 5K mark is "a violation of Tough Mudder's common law and statutory trademark rights," repeated letters demanding that Harmony immediately stop its use of the mark, suggesting that it will sue Harmony or take steps to impede its ability to continue its use of MUDDER'S DAY MADNESS 5K, have created a concrete dispute between the parties regarding their respective rights that warrants a resolution by declaratory judgment.

28. This dispute, if left unresolved, will adversely affect Harmony's relationship with its clients and the public in general, will impede its ability to expand and to continue its fundraising efforts, and will hamper its ability to continue its mission of placing children into permanent homes of foster parents.

29. Here, declaratory relief will serve the useful purpose of clarifying and settling the legal rights between the parties with respect to the MUDDER'S DAY MADNESS 5K trademark.

30. Under the circumstances, a controversy of sufficient immediacy and reality exists with respect to Harmony's use of its MUDDER'S DAY MADNESS 5K trademark to warrant the issuance of a declaratory judgment.

31. Therefore, there exists an actual and justiciable controversy between Harmony and Tough Mudder regarding whether Harmony is infringing the alleged trademark rights owned by Tough Mudder.

## DECLARATORY JUDGMENT OF TRADEMARK NON-INFRINGEMENT UNDER 28 U.S.C. §§ 2201 AND 2202 *et seq.*

32. Plaintiff repeats and re-alleges each of the allegations contained in paragraph nos. 1 through 31 of this Complaint, as if fully set forth herein.

33. A dispute has now arisen between the parties, and an actual and justiciable controversy exists, in that defendant Tough Mudder asserts, and HFC denies, that use of the MUDDER'S DAY MADNESS 5K mark infringes Defendant's rights.

34. Plaintiff requests a declaration and judicial determination by this Court that Plaintiff's use of the MUDDER'S DAY MADNESS 5K mark does not infringe any trademark right of Defendant.

35. Plaintiff has no other existing, speedy, adequate or proper remedy other than a declaration and determination of the parties' rights as prayed for herein.

## CANCELLATION OF FEDERAL TRADEMARK REGISTRATION UNDER 15 U.S.C. § 1064

36. Plaintiff repeats and re-alleges each of the allegations contained in paragraph nos. 1 through 35 of this Complaint, as if fully set forth herein.

37. The alleged mark MUDDER used in connection "Organizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" on the grounds that the mark is generic as to these services" is understood by the relevant purchasing pubic to be the generic name for a mud run event.

38. The U.S. trademark registration obtained by Defendant is invalid, unenforceable, and should be cancelled because the primary significance of the mark to the consuming public is generic with respect to the services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment as follows:

39. A declaratory judgment that Plaintiff's use of the MUDDER'S DAY MADNESS 5K mark does not infringe any trademark right of Defendant.

40. An order to the U.S. Patent and Trademark Office cancelling U.S. Trademark Registration No. 4527038 for the mark MUDDER in International Class 041 for "Organizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" on the grounds that the mark is generic as to these services.

41. Costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon.

42. That Defendant have such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

DATED this 27th day of April 2016.

Respectfully submitted,

LUEDEKA NEELY GROUP, P.C.

_[signature]_

Michael J. Bradford (TN Bar #22689)
Stephen D. Adams (TN Bar #30057)
900 S. Gay Street, 1504 Riverview Tower
Knoxville, TN 37902
Phone: (865) 546-4305
Fax: (865) 523-4478

*Attorneys for Plaintiff*